Case No. 25-1187, Fed Up. Alon Refining Krotz Springs, Inc. Petitioner v. Environmental Protection Agency. Mr. Feith for the petitioner. Mr. Gates for the respondent. Good morning, Council. Mr. Feith, please proceed when you're ready. Thank you, Your Honor. Daniel Feith for petitioners. I'd like to reserve three minutes for rebuttal. May it please the Court. This Court can resolve this case easily and narrowly by holding that the phrase, full calendar year prior to seeking an extension in EPA's regulation means full calendar year prior to submitting a petition for hardship relief. All agree the Court has jurisdiction to decide that question, that interpretation of EPA's regulation is consistent with its plain text, context, and structure, and indeed, that interpretation is how EPA has consistently explained the regulation's meaning right up until the August 2025 denial decisions challenged here. Under the clear text of EPA's regulation, petitioners were eligible for 2024 exemptions when they applied for them in 2025, and EPA violated its own regulation in denying their petitions. You just talked both about the statute and the clear text of the regulations. I just want to confirm something which I think is true from your papers, which is, from your perspective, it doesn't matter whether we view the case under the text of the regulation or under the text of the statute, the one-year, two-year text that you started with, right? Because either way, if we were to agree with you on either of those arguments, you would be in the same place. That's correct, Gianna. We went either way. As to the statutory challenge, we think the Court can and should resolve the case on that basis as well. EPA barely tries to defend the merits of its statute. Why wouldn't we do both if we can do one? Well, to be clear, we would be happy with winning the case on either grounds. The Court could decide them on alternative bases. But as I said, I think that either ground would be sufficient. The question I had is, if we assumed that the denials were inconsistent, just assuming that we thought the denials were inconsistent with the Clean Air Act, would we have to say anything about the regulation? I mean, there might be consequences for how EPA would need to interpret its regulation in the future, but would we need to reach any question about the regulation's interpretation? I don't think you would, Your Honor. I think that the way that EPA has applied that regulation here, it requires that a refinery be small for two years. The statute clearly— And that seems to be a bit idiosyncratic. I mean, there are only a few examples of that occurring. Your Honor, I think— These two petitions, and it sounds like the parties identified one other instance where denial was based on this interpretation. Well, Your Honor, so I know that EPA tries to argue that in 2022, it denied a petition based on this interpretation. I don't actually think that's clear from the 2022 denial petition. So then they made only two such denials. Right. It's a very small number compared to the hundreds of exemptions that are sought, it seems. That's correct. Your Honor, this is the first case where EPA has come out and clearly said that in its view, the 2014 regulation requires that a refinery be small in the year for which it's seeking the exemption and in the prior year. So then I guess I have a related question. Again, assuming we thought the denial was inconsistent with the Clean Air Act, would that determination, you know, necessarily require us to— would that determination in some way run into the time bar on challenging the regulation? Just like a pure statutory conclusion that the denials are inconsistent with the Clean Air Act, does that have any necessary link to the time bar? No, Your Honor. No, Your Honor. The time bar applies where a party is seeking relief that runs directly as to the underlying rule. So the time bar would apply if we were seeking relief running directly as to the 2014 regulation. We don't seek any relief as to the 2014 regulation. We simply seek vacant of the 2025 denial decisions. And the Supreme Court recognized this key distinction just last term in McLaughlin Chiropractic where the court distinguished between a declaration that a rule is invalid, which it identified as relief that runs directly as to the rule, and a court considering the validity of the rule in the context of determining how a statute applies to a regulated party in an as-applied setting. And our challenge falls into the latter category, that under this court's precedence like NRDC, the EPA, where we are both seeking relief not as to the underlying regulation, and the substance of our challenge runs only as to the denials. So, yeah, I take those points, but I think EPA is arguing that by, you know, having a statutory determination like this, we would somehow be circumventing the Clean Air Act's very stringent time bar. And so what would be your response to that? So, Your Honor, a couple points on that. I think that, again, the principle that McLaughlin laid down, and that this court has recognized as well, is that as-applied review of the validity of a regulation is available unless a statute clearly says otherwise. And Section 7607B1 of the Clean Air Act does not clearly say otherwise. And we know that both from this court's decision in ARCA I, where the court said that provisions like 7607B1 imply no limitation on the well-recognized principle that parties against whom a regulation is enforced can challenge the validity of that regulation in an enforcement context. This is not an enforcement context. Yes, Your Honor, but this court has taken that very principle that it was applying in ARCA I and recognized that it applies in non-enforcement contexts as well. So, you know, cases like Crew v. FEC, or say the total communications, all apply that principle outside the enforcement context as well. We also know that Section 7601B1 doesn't bear the meaning that EPA says it does from McLaughlin itself. In McLaughlin, where the court is discussing the Clean Air Act, the court recognizes that the Clean Air Act does preclude as-applied review in enforcement proceedings, and it does that in 7607B2. That provision would be entirely superfluous if 7607B1 meant what the government says it does, because in EPA's view, 7607B1 precludes all as-applied review, and so there would be no purpose to Congress precluding it as enforcement proceedings specifically in the next provision. And so that provision is very powerful evidence that the government's view of 7607B1 is incorrect and that 7607B1, as this court recognized in Article I, doesn't limit our ability to bring an as-applied challenge to the 2025 denial decisions, which is why this court... It's important to your analysis that in this case, you are not saying that the denial of your application complied with the regulation, because it seems to me that that is a factual distinction that sets us apart from something like Sinclair IV and other things, because you're just saying the statute says a calendar year. This decision that was rendered in my case required me to meet the standard for two calendar years. That violates the statute, and this is not a backdoor way to challenge the regulation, because this didn't comply with the regulation either. And I think that's important, because in a case where the agency relies on a regulation and you challenge the regulation and also challenge the statute, the statutory challenge is necessarily also a challenge to the regulation. But where factually you're saying it didn't comply with the regulation, you're not challenging the regulation when you say that this decision doesn't match the statute. To me, I feel like that factual distinction seems important, because in a case where you say, you apply this regulation correctly, but the regulation is wrong, when you go to the statute, your statutory claim, then you are, by definition, also challenging the regulation. But in this case, since you're not relying on the regulation at all, you're doing a different kind of claim than, for example, Sinclair 4. Is that right? Well, Your Honor, I do think that that is a distinction, a distinction with Sinclair 4. I think that's absolutely a basis for differentiating this case. I guess I would nevertheless push back gently on the idea that even if the— So let me make one point first. The fact that this is not consistent with the regulation as well gives us an additional jurisdictional hook as to the underlying regulation, because EPA's about face on what the regulation means and on what the regulation's requirements are in the 2025 denial decisions is a separate legal after arising ground for challenging the regulation itself. But I would just— In terms of our primary jurisdictional argument, I think that there's still a distinction between seeking relief directly as to the 2014 regulation and a statutory claim that may implicate whether or not the 2014 regulation is correct but doesn't actually necessarily require the court to discuss the 2014 regulation. The court, I think, as you're pointing out— In some cases, that would be a backdoor way to challenge the regulation after your time has expired. In some cases, it's not. And I'm trying to figure out when it is and when it isn't. Well, I think that McLaughlin—I think the important point is, are you seeking relief as to the underlying regulation or are you simply seeking relief as to the action that's before the court? That's the fundamental principle that McLaughlin recognized. So in McLaughlin, the Hobbs Act gave courts of appeals exclusive jurisdiction to determine the validity of rules. And the reason that the court explained that the district court, in the case that became McLaughlin, was able to itself decide whether or not an FCC interpretation was correct as applied to the parties there, was that the parties weren't seeking any relief as to the FCC's rule. The parties were simply arguing that the statute required one thing. The FCC interpretation that I believe it was the defendants in that case was relying on was incorrect. And so the court could just resolve that in that narrow as-applied setting. And we're basically seeking the same thing. We think the court can resolve our statutory challenge simply by comparing the asserted basis for the decisions in the 2025 denial document against what the Clean Air Act's text requires. It doesn't even need to mention the 2014 regulation. But the implication would be that the 2014 regulation violates the statute. It would just be an implication. That would be an implication. And certainly, you know, in this circuit, the court's decision, if it's precedential, would have precedential effect. But the important distinction between seeking relief as to the underlying rule and seeking relief simply as to the application of that rule is that when you seek relief as to the underlying rule, for example, when you seek to set aside that rule, it wipes the rule from the books. The agency can't enforce that rule against any party in any context, arguably anywhere. Here, the RFS, these small refinery exemptions are actually a good illustration of how much narrower the relief we're seeking is. If we ruled the way that you proposed, there would be this ruling about this action violated the statute regardless of the regulation. There would be the implication that the regulation violates the statute. And where would that leave, I guess, parties, et cetera? Would they need to move to amend the regulation in light of this opinion? Or how would, I guess, people deal with the fact that there's, by implication, a ruling that says that that regulation violates the statute? Look, I think it's your honor. I'd say that I'm on my rebuttal time, but if I can answer. So I think that parties would have a number of options. I think primarily, though, this would be up to EPA. The only reason that we're in the D.C. Circuit for this case is because EPA has taken the position that all of these challenges belong in the D.C. Circuit, and we haven't challenged that here. But does the Supreme Court recognize in Calumet-Freeport that small refinery exemption decisions by default belong in local or regional circuits? So in principle, if EPA wished to continue trying to apply this blatantly unlawful regulation, it could do so and try its luck in other circuits. And this court's decision would have persuasive authority. But the point is that this illustrates why our challenge is not, in fact, the backdoor challenge to the 2014 regulation. If it were, EPA wouldn't have the ability to continue doing that. So we think that, you know, our hope would be that EPA would take the guidance from this court and change the regulation itself or would at least stop applying the regulation in an unlawful way. And, well, but, you know, but if EPA didn't do that, certainly parties could seek to, could petition for amendment of the reconsideration. You know, that's not a substitute for judicial review of the sort that we're seeking, given the fact that EPA has a tremendous amount of discretion over whether to grant such petitions and, you know, under the ARPA line of cases, trying to seek review of those petitions is extremely difficult. But I think that for purposes of this case, the, I think the questions Your Honor is driving at, you know, really underscore that our challenge is strictly as to the 2025 denial actions, and that's why this court has jurisdiction to consider it. Can I ask you a timing question? Because I guess there is some indication that time is of the essence. And so my understanding is that earliest the 2025 RFS obligations could be set by final rule at this point would put us at June 1st as the quarterly report deadline right now. That's correct. But we don't know exactly when this will be. I guess my question is, how many days before whatever the deadline is, do you need a ruling in order for the RINs to not expire before you can do something with them? So we have asked for this court to direct EPA to adjudicate our petitions by 21 days before the compliance deadline. And 21 days before June 1st would be the earliest. It's the latest we would want EPA to adjudicate our petitions, which would mean that this court, we would respectfully ask this court to rule far enough in advance of that date. So three weeks before June 1st is May 11th. We would respectfully ask the court to rule. The statute gives them 90 days, and we're already 90 days. We're within 90 days already of June 1st. So, Your Honor, a couple points on that. EPA took more than 90 days to adjudicate our petitions in the first instance. And we cite in our brief a case in Raid People's Mujahideen Organization, I believe, where even though the statute gave the government six months, this court ordered relief within four months. So we think that it's within the court's authority to order faster relief. EPA hasn't disputed that. Where does that already come from? I see you have one case, but as a matter of first principles, where does it have authority to shorten a deadline that Congress has set? Well, I think it's arguably equitable authority to ensure that we obtain meaningful relief in this case. I think, again, EPA has already taken the 90 days that it was given. And so it's not clear as a statutory matter that they get an additional 90 days anyway. But I think that, you know, EPA's— The best argument is that they don't get a second set of 90 days. And I would point out EPA has never argued that the court lacks the authority to direct it to issue relief faster. And so we would ask that the court issue an opinion with sufficient time for EPA to adjudicate our petitions by May 11th. And, Judge Penn, I would just add, our understanding is that the 2026 rule is currently before OMB and is due to be issued this month, in which case it would actually be June 1st. I mean, you know, my—Mr. Cates, my colleague on the other side, may have more insight into the timing. But that's our best understanding of when the compliance deadline is likely to be. This may be a question for your friend on the other side, but it seems that there's been reference to the possibility of EPA generating, I guess, replacement RINs or something in order to— like, if we were to miss this deadline, that there would be a way to make sure that there is some relief for your clients by issuing replacement RINs for the ones that— Let me tell you what I'm looking at. In the denial order, EPA said, EPA acknowledges that it has, in exceptional circumstances, permitted individual small refineries to generate new current-year vintage RINs as a method of implementing exemptions when decisions denying those exemptions were vacated by a court. And then there is apparently a Tenth Circuit case that talks about replacement RINs? Your Honor, there have been a couple instances where that has happened. EPA has never said that it would do that here. And, in fact, there's a whole set of consolidated cases in this court challenging kind of the rest of the—almost all of the other partial denials in the August 2025 decision where the fact that EPA went on in its decision to say that it's not going to issue replacement RINs and it was only going to return expired RINs to parties and that that was its policy— Wait, somebody said that in the other litigation? So, in the same decision that you were just reading from, EPA went on to say, we're not doing that here. We're going to be returning—we're going to be returning kind of whatever vintage RINs the refineries expired to them, which means that in the vast number of cases, EPA returned to the parties worthless RINs. That's the situation that we're trying to avoid here. But if we can order them to change their deadline, can we order them to order replacement RINs? I don't know. It just seems that it's a very tight timeline for this court to rule, but I'm trying to understand how real is this deadline. Your Honor, I guess I would say that given all of EPA's positions to date, we think it's a real deadline. EPA has never offered us that alternative. I suppose if the court were to order it, that could be a way of, you know, resolving the harm to us. But, you know, that really hasn't been, you know, raised by EPA as a possibility to date. I'm sure our colleagues don't have additional questions at this point. Okay. Thanks very much. Sure. Mr. Cates. Good morning. May it please the Court. My name is Redding Cates for the United States EPA. Petitioners brought their principal challenge in this case over a decade too late. Long before EPA's August 2025 decisions, petitioners had standing and a right claim to assert that the 2014 eligibility regulation violated the Clean Air Act. But they chose not to. This Court's precedent, as expressed often, but only most recently in Sinclair 4, is clear in this situation. Petitioners cannot challenge the 2014 regulation that violates the Clean Air Act under the guise of challenging August 2025 adjudications. They bring one timely, though narrow, challenge, whether EPA correctly interpreted its 2014 eligibility regulation when finding them ineligible for an exemption in the year 2024. Mr. Cates, why shouldn't we look at this action? You know, the 2025 denials are discrete, final agency action, a kind of, I don't know, sort of an adjudication of whether they're entitled to an exemption. So that clearly can be challenged. They brought that challenge within 60 days. And they raised an argument that the denial, the discrete action, is inconsistent with the Clean Air Act. If we were to conclude that it were inconsistent with the Clean Air Act, why would that be time-barred? Why would that statutory decision be an indirect attack on the regulation? And that's obviously EPA's entire framing here. But to be honest, I guess I'm a little baffled by it. Because it sort of assumes that by denying, you know, by saying these denials are invalid on statutory grounds, that determination would have some kind of universal effect on the 2014 regulation. But that's not how we think about discrete cases. I mean, courts decide cases all the time when we decide a particular issue. Maybe there are some collateral consequences for other decisions the agency will make. But it doesn't mean that the discrete challenge to a final agency action would be time-barred. So I want to understand why you think a statutory ruling would be a time-barred attack on the reg where we say nothing about the reg. Well, the key distinction here is that, and petitioners have meant several times in their briefing, that the only basis for their denial was the 2014 regulation. There's nothing else the court could point to. Well, but that's not really, I mean, yes, EPA cites the reg in making the denial. But there's also a discrete agency action, which they have said is inconsistent with the Clean Air Act. Correct. But the only basis for the denial was that they could not show two consecutive years of data, which is what the regulation requires. Which, okay, that's still, but if that's inconsistent with the statute, why does it matter what the reg says, in a sense? Well, then that's... I mean, if the statute would not permit that sort of interpretation, then the denial is contrary to what? If the statute would not, let me make sure I have your question correct. You're saying that... So say I read the Clean Air Act to require, you know, if you're seeking a 2024 exemption, you have to show that you're below the 75,000, whatever, barrels per day throughput for 2024. If you assume I read the Clean Air Act that way, then denial is inconsistent with the statute. And then whatever that means for what EPA thinks about its 2014 reg would be something EPA would have to figure out. Then I think that would run contrary to Sinclair IV and most of this Court's precedent, because that would be a backdoor attack on the regulation itself. When in this case... They say that's a reg. Well, when in this case, the reg is the only basis for the denial. Now, the question about whether the reg itself was properly interpreted is a timely challenge, and we acknowledge that. But the Court couldn't simply say this is contrary to the Clean Air Act. Why? Because it required two years. We say that's what the regulation requires. Yeah, but you can't just rely on a reg. If your decision is contrary to statute, it's contrary to statute irrespective of how the agency interprets the regulation. Not in the context where an agency has written a regulation, and it's over a decade old, and that regulation requires this result. And we believe that it does. Maybe EPA's argument would have some force if, say, for instance, the Clean Air Act doesn't define small refinery. There's no definition of small refinery. And then EPA 2014 has a regulation that defines small refineries. And then, you know, implements it the way it's done here. In that instance, I think your argument that the denial is based solely on the reg, solely on the way the reg defines small refinery. Maybe in that instance it would be a backdoor. But here the statute defines small refinery, very specifically with, like, a number of barrels, you know, per calendar year. And that's in the statute. So is it the case that where you have a specific statutory definition, but the agency enacts a reg, a party that receives an adjudication of sorts, can never raise a statutory challenge because the reg has sort of superseded the statute? I mean, that would be a very peculiar outcome in effect. It would make a time bar drive the contrary to law assessment, arguably. Your Honor, I disagree. And I would point you to Sinclair 4 because while it's true that the statute defines what a small refinery is, the statute does not define who is entitled to a small refinery exemption. So in Sinclair 4, EPA had passed a regulation that required a verification letter. And the party in that case said, we were small. We don't need to submit the verification letter. And this court held that, well, there's a regulation that says you do. And it's old. And you are time barred from challenging that regulation now. The party in that case brought both challenges. They challenged whether EPA correctly applied the regulation requiring the verification letter. This court said that EPA correctly applied this regulation. And then it said, but you're challenging the regulation itself, which goes beyond the text of the Clean Air Act. But this is where the distinction I was asking your friend on the other side about kicks in. If a party challenges a reg and the statute, and it turns out that the action the party is challenging is consistent with the reg, and then the party then tries to challenge the same action under the statute, it is by definition challenging the reg. That's Sinclair 4. In this case, they say that you didn't follow the reg either. And so I feel like that is an important distinction because what they're saying is put this reg aside. We're just saying we're a small refinery for a calendar year. Statute says it's only required to be a calendar year. The agency action violates the statute. By implication, this reg probably violates the statute too. But they're not challenging the reg. They don't think the reg is appropriate. But in their statutory challenge, they're just saying it's a calendar year. Statute says a calendar year. EPA required two calendar years. It's a statutory violation. And it's not a backdoor to get at the regulation because we don't think the regulation was properly applied either. So I feel like that's an important distinction because they can challenge the action without necessarily challenging the reg under these facts, which are different from Sinclair 4. I don't see how the facts are different from Sinclair 4, Your Honor. In Sinclair 4, the party said exactly the same thing. It said that the reg was being misapplied by EPA and that the reg itself violated the statute. But the answer is that the reg was not misapplied by EPA. Right. And we agree that that should be the rule here. In this case, if we think the reg was misapplied by EPA, it's different. No. I think if you hold in this case that the reg was misapplied by EPA, then you would be ruling on the one challenge that we say is timely. They went anyway. I mean, you lose anyway. Correct. But we lose for a very different reason. Right. No, I get it. But it's just that we wouldn't even need to get to anything else if we'd already concluded that the reg, that your interpretation of the reg was wrong. Correct. That's right, Your Honor. That would be a worse outcome, though, for EPA, arguably, because it would upend this regulation that had been in place for a long time, which includes a whole range of, you know, various factors. But it would not open a huge loophole to the backdoor challenge, which I believe this court would be doing if it ruled, as petitioners say, allowing them to challenge whether the 2014 regulation, whether they say so or not, violates the Clean Air Act. Half of their brief is talked about how everyone, when the 2014 regulation was passed, knew that it required two years of data. And if I could, I'd just like to read something for you. It says, EPA decided in 2014 to measure refinery output based on the year for which the exemption is sought and the immediately preceding year. The output of a small refinery seeking an exemption for the year 2020, for example, must be a small refinery in both 2020 and 2019. Now, that's not me recapitulating what the 2014 regulation says. That's this court in Sinclair IV. Can I ask you this? So you're going to resist the assumption that I want you to accept, but just assume that you were faced with a choice. Either you lose under the statute because a year doesn't map onto the two-year framework that EPA has applied under its interpretation of the reg, or you lose because your interpretation of the reg is inconsistent with the reg itself. There's these two arguments. Which is less damaging to you?  You would rather have the latter. Correct, because I think that that is proper under this court's precedent. Okay, so I understand what you're saying about timeliness. So I get that you think that the challenge to your understanding of the regulation is there's no timeliness part of that, whereas you think there's a timeliness part in the other one. But I don't understand why the – is really what you care the most about as EPA is vindication of your understanding of the timeliness rule? Or do you really – it would seem to me the choice would be between would you rather have your interpretation of the regulation be deemed invalid, or would you rather have your application of the statute to require two years be deemed invalid? That seems to me to be the choice that would be on the table for you. Yes, there's timeliness implications. And if you tell us what we really care about more than either of those substantive outcomes in terms of the regulation versus the statute is timeliness, then I'll hear you out and accept it. But I guess I'm a little surprised that you would be focused purely on the timeliness question as opposed to which substantive result is the one that you would think would be less damaging. Well, perhaps I could answer that. You're right. I think there are. I think that the timeliness issue is more important, and I'll tell you why.  I'll tell you why, if I could. So let's say this court issues a ruling that says EPA's 2025 decision is invalid because they required these refineries to show two years of data. Yes. And that violates the statute. EPA at this point cannot continue to use the 2014 regulation at all. It says if the court has invalidated it because that was the sole basis for the denial here. The 2014 regulation as written requires two years of data almost all the time.  But that's. It also requires a lot of other things, though. No, I just mean it's like a big regulatory scheme. It's not just the two years of data. That's true. But I guess what I'm trying to say is that in this instance, if the court said that what the 2014 regulation requires violates statute, then that part of the regulation is no longer valid. But that's a problem for. So it's a substantive. The concern for you is not the timeliness, qua timeliness. It's just the timeliness is a gateway to a conclusion about the regulation's validity vis-a-vis the statute that you find problematic. That's your concern. And you think that that. If in order to find the challenge to be timely, it would strongly imply that the regulation is inconsistent with the statute. Then what you care about is the fact that the regulation would likely be deemed inconsistent with the statute. And that's a big problem for EPA, as opposed to saying that EPA's construction of its own regulation is a problem because that doesn't have the same sweeping effect. I think that's part of the concern. And maybe you captured this as well. I'm not sure. But the other big concern is that EPA administers this program every year. Every year it has to adjudicate so many of these applications. And it's always doing it with two years of data. At least that's the heartland. Correct. But beyond the two-year requirement that was established in 2014, EPA has a process, which the Clean Air Act requires, where it promulgates rules about how this annual process is supposed to work. And if this court allows this backdoor challenge to one of those rules a decade later, it could be applied to any of them. The Clean Air Act is structured to provide that kind of finality. It says when EPA does these rules, like the one in Sinclair IV, like the ones in ARPA, and no one challenges after 60 days, that's the rule. That's the timeliness concern. Okay, that one has to do just with timeliness, which is that you're just worried that if this challenge is deemed, this statutory challenge is deemed timely, then it opens the floodgates to other kinds of challenges that would be along the same lines. I would say that EPA is worried about that is an understatement. Yes, Your Honor. Because of the difficulty in managing this program. That's not the way the Clean Air Act is supposed to work. And whether petitioners say they're challenging the 2014 regulation, and even if this court in its decision says we're not challenging the 2014 regulation, but that decision says you can't require two years of data, the regulation is worthless. Mr. Cakes, that seems like just such a universalistic understanding of what, you know, what a contrary to law decision about these denials would mean. Because even in some of the briefings, you suggest that the regulation is somewhat ambiguous, or if there's ambiguity, it could be interpreted in different ways. So if we make a ruling about what the statute means, EPA can then interpret its regulations consistent with that understanding. It's not as though the whole regulation disappears. It just means you can't base a denial on two calendar years of throughput, which apparently has only happened a couple of times. I mean, there are thousands of these exemptions adjudicated. And if this is like two or possibly three times over a decade, why isn't the more sort of appropriate judicial thing to just take these denials, if we believe that they're contrary to the Clean Air Act, and set them aside? It's sort of like EPA is assuming that that has this kind of, you know, apocalyptic thing on the whole, you know, scheme. But why would that be the case, where there have been two or three denials on this interpretation? And why would EPA rather have this court fully reinterpret the way we read, the way EPA should read the statute if we wanted to, you know, give relief to these petitioners? So we thought these petitioners were entitled to relief. So I guess there was a lot there, and I'll try to get it all. The first thing is that it is the case that it has been rare to deny on this basis. But that does not mean that there have not been massive effects on the regulated community. Since 2014, almost every small refinery has ensured that it is under the threshold for two years. In fact, most of them are under it every year. So it's not simply the case that throwing out this two-year requirement wouldn't really matter very much. It would—EPA is not being apocalyptic for rhetorical purposes. It's being apocalyptic because it has to manage this program. And it would have to take this court's order saying, this regulation is fine, but you can't follow it anymore because one year means two years. It would have broad-reaching effects on the kinds of petitions that parties could file. Many parties have not filed because they were above one year because they knew EPA's interpretation and decided not to seek them, should they get to go back and seek them now. So you want people to not be able to challenge their denials of contrary to statute where the statute says a calendar year. What EPA wants is for this one— So you just want to make sure that those challenges just cannot be brought, that people can't challenge based on statutory grounds. So I close the courthouse doors for that. I don't want to close the courthouse doors for that. I want the court to abide by the Clean Air Act. And what the Clean Air Act says is— What does the Clean Air Act allow for two years? If you were seeking exemption in 2024, on what statutory basis can EPA require that you meet the standards for another year in addition to the year you're seeking the exemption? What's the statutory basis for that? Your Honor, could I respond to the question you asked just before that first? Okay. So we're not trying to close the courthouse doors to liquidate the claims. What we're trying to do is follow this court's precedent in the Clean Air Act, which says a party cannot challenge an old regulation after 60 days unless there's an after arising event, which they don't have. And so we're not closing the courthouse doors in a way that Congress didn't intend. Congress intended this in the way it's structured in the Clean Air Act. It said that EPA could promulgate these regulations, and if no one challenges after 60 days, that becomes the regulation. It cannot be called into question later. The court could say, well, you're misinterpreting the regulations in adjudication, which is a timely claim they bring here. But it can't go back and start messing with the regulation. And my broader point, and I understand you're saying we wouldn't have to reference the regulation in our decision, but it would have that effect to say that EPA cannot require two years, which everyone acknowledges.  So maybe that runs into the time bar. I mean, assuming it is— It does run—sure. Okay. Excuse me, Your Honor. Why—what I don't hear EPA making an argument about is why the two years, why a small refinery would have to be below the statutory throughput for two years, the exemption year plus whichever other year, you know, however you read the regulation, two years. Well, we make this argument in our brief, but we don't think we should have to because it's time barred. But I'm happy to talk about why EPA decided in 2014 to make this regulation the way that it did. And that was because at the time almost all refineries were applying during the year they were seeking the exemption, which makes sense. They wanted to know before the year was up, and they had to comply whether they were going to be exempted or not. And EPA looked at the statute and said, well, they have to be under the threshold for a full calendar year, but also they have to be a small refinery in the year that they're seeking. Okay. And so EPA said, well, the other problem is that the Clean Air Act allows them to apply for an exemption at any time. Okay. So EPA said, well, which year is it? Is it the full calendar year before they've applied, or is it the year during they're applying, the one they're actually seeking the exemption for? And EPA said, well, I think we have to require both because in one instance, a refinery could be not small the year before, and so it would not have a full year of data and therefore comply with the Clean Air Act. But if we just look at the year before, then that party can, in the year of seeking an exemption, blow right through the threshold. And so EPA said, well, we need to ensure that they're projected to stay under the threshold for that year as well, which is why the 2014 regulation required, and again, I'll quote from Sinclair 4, decided in 2014 to measure refinery output based on the year for which the exemption is sought and the immediately preceding year. So that's why it complies with the Clean Air Act. But that rationale doesn't seem to be necessary in this instance where the applicant is applying the year after the year that they're seeking the exemption. And now we know which calendar year we need to look at, and it meets the requirement. It is a small refinery for the year that it's seeking the exemption. So it seems that your phrasing in your regulation could be fined as applied to certain people where you're not sure and they're applying early. But in the case before us, your regulation by its very text would allow these plaintiffs to, or these petitioners, to benefit from the exemption. And I don't see, what's the problem with that? Like, if we rule in favor of the petitioners, this is apparently a very unusual situation. Like, it doesn't happen that often. Or maybe you're saying that people, you know, don't apply because they think they won't win. But it just seems to me that the concerns that you expressed that justified the way this is structured don't apply to this case, and this case falls within the actual words that you put in the regulation that entitles them to benefit from the exemption under just a pure regulatory interpretation. Adopting petitioners' interpretation of what the regulation says would make almost every other EPA adjudication completely arbitrary, because it would treat two refineries that are the same size and refine in a calendar year exactly the same amount of fuel differently, based not on those criteria at all, but based on the date when they apply. So, Mr. Tate, I'm sympathetic to that argument, that their interpretation of the reg in all the other circumstances might lead to some very peculiar results, which is why it seems preferable not to take that interpretation of the reg, but to decide on the Clean Air Act. And then, you know, EPA can't base a denial going forward on two years, requiring two years. But, you know, it can continue to administer the program, you know, in whatever way it thinks is sensible. No, I just don't think that... I mean, for instance, EPA could require more information, but only base the denial on one year, if we were to rule that way under the Clean Air Act. If there's some administrability reason for requiring additional information, EPA could ask parties maybe to provide that information for some administrative purposes, but the exemption denial would have to still be based on one year of data. The 2014 regulation is on the books, and in effect, an EPA has to follow it. How could it follow it if this court issued that order? It is required to point to data for the year parties seeking the exemption and the year prior. That's how EPA has always interpreted the regulation and always applied it to every single applicant for the last 12 years. Right. I think you would need a new regulation that doesn't require two years of data, right? I mean, that's what ultimately would happen, because if that's the statutory interpretation, that a year means a year and you can't look at two years, then this regulation can't be applied, period. Your Honor, I think you have it right there. That is the reason why, although I understand the court's interest in not adopting their interpretation, because it would lead to insane results, but I think the court only has two options. It either invalidates the regulation in effect or actually says it in the opinion, which we believe is time-barred, or the court has to adopt their interpretation or give EPA some other interpretation. Well, on their interpretation of the regulation, so I understand your point about what you think are similarly situated entities being treated differently, but why is that the case? Because if everybody has a choice, let's say we conclude that their interpretation of the regulation is correct and just accept that, I know you don't want to accept it, but just accept that for the purpose of this question, then everybody would have a common understanding about the way the regulation is correctly applied. Obviously, EPA could change the regulation, but for now the regulation would be fixed. Then there wouldn't be the problem because everybody would have the choice about what year to apply in, so you wouldn't necessarily have the dilemma that you outlined about similarly situated refineries being treated differently because everybody could decide to apply after the fact. No, Your Honor, because time only moves in one direction. Well, I get it. People have had interpretations in the past, so sure, those decisions are made, but you have a different point. Yes, Your Honor. So, for example, in the 2025 decisions, EPA resolved petitions for calendar year 2021, 2022, 2023. Those decisions are being challenged in the main case that this one's been severed from. If the court were to rewrite the regulation or, I guess, more charitably adopt their interpretation— But you'd be construing it along the lines that they would like.  Currently pending challenge adjudications right now, so let's take the year 2021. Right. Let's say a party in 2021 is under the threshold in 2021 and 2020. That's what they've understood EPA's regulation. That's what this court understood EPA's regulation to mean in Sinclair IV. That's what EPA said in the preamble, and that's what the entire industry has thought until now, until this very narrow circumstance when a party applies not just afterwards, but the immediately following year of the year it's seeking the exemption. That's the only time this works, when two years under the regulation becomes one year. Right. Okay. But for a party that's applied for 2021, if the court were to adopt Petitioner's interpretation, they would have to show data not from 2020 and 2021 like they've always showed. They'd have to go back and say, oh, my God, what did we do in 2024? We might lose our exemption now. Oh, you mean the year that they applied? Correct. When are they applying? Oh, I'm not understanding, and you're a hypo. Sure. When are they applying? Well, this is not hypothetical. This is what it's actually. Okay. What scenario are you talking about? The one that has occurred that EPA adjudicated in the 2025 decisions. So that was 170-some-odd decisions. Those decisions were not just for 2024. They were for exemptions for 2021, 2022, 2023, 2024. But why wouldn't this be prospective if we ruled this way? So it wouldn't affect all the pending ones. Those petitioners I just described that applied for those for many years all at once are in the same position as these petitioners. It's the same adjudication. It's the same final. Okay. And the adjudications haven't completed, so. Correct. It was one adjudication. It's retroactive. Exactly. It seems that the petitioner's reading of the regulation only avoids those absurd results if you read the whole RFS program as requiring prospective seeking of exemptions and no retroactive seeking of exemptions, which would be an even greater upheaval to the RFS program, as at least I understand it. That's right, Your Honor. I think the issue is that the 2014 regulation was written in a. I assume actually something petitioners wouldn't want is a prospective only, because a lot of these things are applied retroactively.  And given the remedy issues that are involved in the main case, even though the fact that these petitioners, these petitions for 2021 are old, they still think they can get some relief now. So it's still a live issue. It's not as if, well, all of this is in the past. The court's opinion adopting their interpretation would have immediate and radical ramifications for the way that EPA adjudicates these more refinery petitions. But equally radical, regardless of which path we take. That's not true at all, because if the court agrees with EPA's interpretation, the one that it expressed in Sinclair 4, and the one that the EPA has been using since 2014, it would have no upheaval at all. Say we don't. Sure. Okay, say we don't. Which is less upheaval for you, the regulatory approach or the statutory approach? I think as I answered earlier, I think this court adhering to the idea that the regulation itself cannot be challenged. So the regulatory approach is better, because even though there will be upheaval in this program, it will open the door for all the other programs to be challenged as violating the statute. Yes, Your Honor, as this court is well familiar with the Liener Act, it has a lot of provisions like this. And I think that would be apocalyptic from EPA's perspective. Suppose, take timeliness out of the field of vision. That's hard, but yes, Your Honor. Yes, just do it. Pretend there's not a timeliness issue. Okay. All right. Then as between losing on your interpretation of the regulation, losing on their interpretation of the statute, which is preferable? Losing on our interpretation of the regulation, and the regulation stays unchallenged, and EPA has to. And then you would do the weird things where someone applies in 2024, and they have to show compliance in 24 for a 21 exemption. You would rather have that world? I would rather have that world than a world where parties can challenge decade-old regulations. I don't want you to think about the implications for timeliness. I think we understand the point on that. But suppose there were no implications for timeliness. Okay. Then I'm just asking, would you rather be faced with a situation in which EPA's asserted interpretation of the regulation itself were deemed invalid, or a situation in which their statutory challenge succeeded so that a year means a year and you can't look at two years of data? I think I understand now how I misapprehended what you were asking. So what you're saying is their statutory challenge, which I understand is a challenge to the regulation, but you're saying it's not. I'm saying assume that for the questions that have been asked, there's a difference between challenging the statute, a challenge under the statute, and a challenge under the regulation. Then you've got two alternatives. One is a challenge under the statute because the statute refers to a single year. That's ostensibly the interpretation of the statute. And this result can't be squared with that because this result requires looking at two years. That sends a strong implication about the validity of the regulation, which presupposes two years of data. That's one resolution. And the other is your interpretation of the regulation is wrong because it speaks in terms of the year prior to seeking an extension. That has to do with the year in which the extension is sought, not the year for which an extension is sought. Between those two ways of having the determination set aside, which one would work better? Could we follow one of those scenarios a little bit further so that I make sure I can answer this properly? Okay. So in the instance where the court says in its decision nothing about the 2014 regulation at all and just says this adjudication violated the Clean Air Act because it required one year instead of two, you're saying in that scenario EPA is now in a position where it has to continue to comply with the 2014 regulation, but it can't do that. That may be the result for EPA. I mean, I think by hypothesis the opinion wouldn't necessarily say that, but I think I'd take the point. I think we accept the point that under that scenario EPA would face a serious question about the regulation because the regulation by its terms looks at more than one year. Wouldn't you have to amend the regulation and that would all be prospective and you wouldn't have the problem with the 2021 and 2024 problems? Well, amending the regulation would not be immediate. But there would be some period, but ultimately you'd have to amend the regulation. And I guess how bad is the dislocation for that period before you amend versus having to deal with all the past problems? I mean, they're both pretty bad, so it's hard for me to pick. I mean, the ruling the way the Chief Judge described, though, would leave it with the agency, which is where this complicated scheme belongs, to decide how to interpret the 2014 regulation consistent with our opinion and then also determine based on its own decision making how, you know, whether and how to amend the regulation in the future. So, like, those complex decisions would stay with the agency and our decision would be about these denials, which are a little quirky. As we said, there are two or three out of, I don't know, hundreds, thousands of these determinations. So why wouldn't, I mean, I guess you could view it as kind of apocalyptic or you could just sort of interpret the reg consistent with the decision and then later amend if necessary. Okay. Your Honor, I think what's difficult for me to divorce here is that if this court adopted that approach, what it would mean is that every party that as of now thought it couldn't challenge a regulation because it didn't at the time would now say all we have to do when we file our petition. It's very clearly that this denial is inconsistent with the Clean Air Act. I understand. And so what the party would understand is all we have to do is file a petition during the adjudication. We're not going to talk about how terrible the regulation is. We're just going to say the fact that they used that regulation to deny us violates the act and we don't care. Let them keep the 2014 regulation on the books because it's never going to be applied to us again. I just don't think they're going to be as, I mean, because there's so many parts of, there are not that many things in the statute that are as clear as like the definition of a small refinery, right? I don't know that there would be like a whole range of statutory challenges. Along those lines, how many of these refineries are there that are kind of straddling the line of 75,000 whatever, is it barrels or whatever per day? I mean, it seems to me like there's probably a bunch that really are small. They're always below. And there's a bunch that are really huge and they're never below. And what you are having apocalyptic worries about are the ones that kind of go up and down around 75,000. How many of those are there? I don't know offhand. What I do know is that it is in their interest to come as close to the threshold as possible, if they're able to, without going over it, because then they get to make money from refining fuel up to the line, right? Every single dollar close to the line. But if you go over it, you lose it. So there is some pressure on refineries to stay close to the line. There's nothing wrong with that. That's a line that Congress drew. I mean, this is just like a rent-seeking program that Congress created. There's nothing impermissible about that. You would only go over. If you're usually below the line and trying to take advantage of this, you only go over in a year where, wow, there's a huge amount of demand. I can make a lot of money this year, and my calculus is this year I'm going to make more money if I go above. You're going to go as far above as you can. Once you're above, like, you want to make as much as you can. But how often does that happen? It just seems to me this is probably a small portion of cases, even though you're assuming it might be huge and apocalyptic. It's not clear to me that it should be. Well, I guess I should try, if I can, to tease out the various apocalypses. So one is that this decision blows a hole in the backdoor challenge prohibition, which allows a party to— No, no. Assume we're just talking about your regulation. We decide on the regulatory basis. You just decide on the regulatory basis. Okay. So you say that regulation cannot be challenged. It isn't being challenged. The regulation is fine. You've interpreted it wrong. We've interpreted it wrong. In that issue, in that instance, it's true that their situation is small, right, because very few refineries have been denied on this basis so far. I don't know that that means that they would have behaved—they wouldn't have behaved differently if they had had this new interpretation of the 2014 regulation all along, if they had known over the last decade that they could go up in a year and then go down in the next year and not lose both years. But that was the understanding they had. That was the understanding this court repeated in Senate 104, and that's what EPA has always done, right? And so setting that aside—yes, I've lost it. Sorry. You had said that their situation—this is a very narrow thing. You have to find the year after, right? Okay, fine. Okay, so—but the court adopts their interpretation. Yes. Okay. Then we have the chaos I talked about earlier, which is refineries who were complying with the regulation all along in the way that everyone knew it was going to be applied are now in jeopardy because they have to look back and think, we were just looking for 2021. We knew that that meant we had to be under for 2021 and 2020. But now, because we applied this year, we have to look at 2024. Do we even qualify? They'll be right back in here challenging that because they're saying, we followed the regulation. You said you prefer that legal ruling to a ruling about the Clean Air Act and these specific denials. You suggested that you prefer us to reinterpret the reg and say EPA's interpretation is wrong, which I actually do agree would probably lead to massive upheaval and lots of backdoor challenges, as opposed to a narrower opinion about the statute, which seems like it may only apply in a couple of different cases. I just— What's apocalyptic about ruling out that these denials are inconsistent with the Clean Air Act? Because it would invalidate the 2014 regulation, and EPA would still have to— You would be putting EPA in a possible position. They would have a regulation they still have to follow. It's still in the books. But how are they supposed to? No, but they couldn't follow it. I mean, I think the bottom line is— They couldn't follow one part of it. I'm sorry? They couldn't follow one part of it. Fair enough, Your Honor. It does say other things, but it's a big part of it. This part, this specific part of it, I take it that the concern is— I just want to make sure I'm understanding it correctly. And I understand the concern about timeliness. I just want to put those to the side for one second. Sure. Just on what the repercussions would be for purposes of this particular provision in the regulations. I take it your point is that if we accept that the challenge is not untimely, and the reason we accept that the challenge is not untimely is that it's only a challenge to the statute. The statute requires, by hypothesis, only looking at a single year. Your point is, well, then that effectively invalidates this regulation because this regulation in every operation, basically every operation, requires calls for looking at two years. That's correct. But it would also have another effect. For example, it would undermine the court's decision in Sinclair 4, because in Sinclair 4, the court said, well, yeah, you only have to be under the threshold for a year, but you've got to do this letter. And they didn't like the letter. They didn't challenge the regulation requiring a letter at the time. But they said, look, we shouldn't have to provide the letter. The letter has nothing. There's no statute. There's nothing in the Clean Air Act about letters. Well, if there's nothing in the Clean Air Act about it, how could EPA require it? The point is, is that EPA is allowed to go beyond the mere definition of small refinery to effectuate Congress's intent that only small refineries can get it. And so that is what the verification letter requirement regulation is trying to do, and that's what the 2014 regulation is trying to do. It's trying to ensure that small refineries are the ones that get benefits. Right, which is to say you think that the 2014 regulation in its heartland applications is consistent with the statute. Absolutely. Of course you do. And what you're worried about is that if there's a ruling under the statute that says the statute talks about one year, and so the result in this case, put aside the regulation by hypothesis, put aside the regulation, the result in this case can't be scored with the statute because the result in this case looked at two years. What you're worried about is, well, the upshot of that is then the 2014 regulation is effectively just irrelevant because it almost always requires looking at two years. Right, and I think I would also add that because the 2014 regulation in this case, so you're telling EPA, go redo the adjudication. And EPA said, well, the only basis was the regulation. How can we redo it? That would be a repercussion for EPA to figure out how to handle it.  And I don't know how it would do it. I feel like this is very logistical. Like, we've talked about EPA could amend this regulation. You said there'll be some time. And can EPA grandfather people who relied on the prior? I mean, I feel like agencies have a lot of discretion. Do you have, like, tools to address this type of location by saying, like, we're going to grandfather the people who relied on our prior application while we amend the regulation? Are things like that available to the agency? Your Honor, I don't know. I think that the agency certainly has some flexibility as to how it manages the program, but it is still required to go through a rulemaking process to take comments and make sure that the whole regulated community is able to weigh in on the changes it wants to make. And so doing these kind of ad hoc carve-outs have all kinds of unintended consequences. I was wondering if you have the equivalent of an administrative stay while you're doing this. Oh, well, I mean, a stay would be of very little benefit because, again, as we noted, the deadline, right, for the court's rule is predicated on the next volume rule coming out. And so every year EPA— I'm just trying to address the people who are still waiting for their adjudications from 2021 and 2022 and 2023, which I'm actually quite surprised to hear that those haven't been adjudicated yet. So maybe I misspoke. They have been adjudicated. They are part of the 2025 decisions that you would be validating, at least part of here. So they're just on appeal. They're being challenged. They're being challenged. They're actually part of—they were part of this case.  Can you—would you—unless there's further questions on it, would you just speak at least briefly to the timeliness question that came up? Not timeliness. On the timing of our decision, the issue about the timing of our decision that came up at the end of the argument on the other side and whether, say, June or March dates, how all of that could play out and what flexibility the agency has. So the March date is not happening. The earliest it could be would be June, and it could very well be September or even later. And as to the question of how much time EPA would need, it would need 90 days because this is an important distinction. This case is not where their application was adjudicated and EPA found they shouldn't get an exemption because of certain economic factors. EPA here determined that they were not eligible. So if this court were to say, no, no, no, they are eligible, EPA's work would really just begin. You have to do the hardship determination. Exactly, and that is the bulk of the work.  So it would not be as simple like, oh, just give it to them. Now EPA would have to say, we didn't think these people were eligible. They violated regulation that's a decade old. Everyone's been complying with this. And so now EPA would have to actually look and say, okay, well, do they get a full exemption, a half exemption? You know, they have to go to DOE. It would be a lot of work. So EPA needs 90 days that Congress gave it, at least, if it were ordered to find these petitioners eligible. But you're supposed to do it within 90 days, which apparently is a deadline that EPA just regularly blows through. I have it on good authority that it tries very hard to get it, but yes. No, I'm sure. And then where does that leave things now? Because if we accept that proposition, then for the RINs, if they were ultimately earned, to be worthwhile, where would the petitioners be? Well, as we say in the brief, Your Honor, petitioners can apply at any time. So part of this is of their own making. But I would also say that, as just Pam pointed out, EPA does have some flexibility. If the court rules that they not only were eligible, but, you know, EPA should take the time to see if they actually get an exemption, I think EPA does have some flexibility if the deadline's expired to give them some relief. But again- You mean with placement RINs? I think that is possible. I'm not saying EPA would do that, but I'm saying that the court would- If the EPA declined to do that, they would have no relief, even if we rule in their favor? That's correct, Your Honor, yes. And EPA pretty rarely issues replacement RINs, isn't that correct? That's true, although, as you said, this case is rare. All right. I'm sure my colleagues don't have additional questions to you at this point. Okay, thank you, counsel. Take care. Mr. Feith, I'll give you three minutes for a follow-up. Thank you, Your Honor. Let me start by addressing some of the supposedly apocalyptic consequences that Mr. Cates described. I think, as Judge Rao pointed out, there have been, at most, three instances of EPA applying the regulation this way in the 10-plus years that the regulation has been on the books. And so the idea that this is going to have some floodgates effect is, I think, fanciful. I think the idea that it would have implications- But the argument is that the reason there's been so few is because everybody understood the interpretation that EPA was applying, so they didn't even try. But once an opinion comes out saying that interpretation is wrong, they'll be clued in that they can do this, and they can apply it any time. So to the extent that- So I guess a couple of points on that, Your Honor. First, with respect to the impact on the pending litigation, EPA only deemed two refineries ineligible under this regulation for the pending litigation. And both refineries are before you today. So it has zero impact for the pending litigation. Judge, do I have to ask, like, for this- I guess- No, Your Honor. Does EPA automatically apply this, whether you- Yes. And that's reflected in the record here. The petitioners here applied. EPA then took the position and said, it appears in our view that based on our now reading of the 2014 regulation, you're ineligible. The petitioners all objected to that, said that's not a correct reading. So it's EPA on its own. So this will have no impact on the pending cases. And I think this concern that- Wait, so is it correct that of the 175 ones that are pending right now, only two of them fell within this category? That's correct. And they are the two refineries that are before you today. As far as the concern about, you know, refineries waiting years to apply, I think that concern is completely unrealistic, given the stakes of these exemptions. These exemptions are worth tens of millions of dollars a year. And so the idea- They're gone in two years, right? I'm sorry? The value- That's correct. Under EPA's policy of returning expired RINs, the refineries are on the clock. And so there is no circumstance where a refinery that, you know, the refinery is going to wait years to apply where, you know, these circumstances that EPA is describing would really come up. I would also add that to the extent that one can hypothesize however unrealistic, you know, strange scenarios, it is entirely a function of EPA's decision to depart from the statute by looking to two years rather than one. And so what EPA is trying to do here is to bootstrap a bad reading of the statute to justify a bad reading of the regulation. And as you pointed out, you know, there are two paths here for us to prevail. We're happy to prevail under either one, whether it's the regulation or the statute. Mr. Friedman, which interpretation would be more or less disruptive to the industry? We spend a lot of time asking Mr. Cates which interpretation might be more disruptive to EPA in administering a program. Do you have a sense of that? I understand you're speaking for the entire small refining industry, but. Yeah, I was going to add that caveat. I, you know, I think, again, we're really happy to prevail on either. I think that a ruling under the statute would probably provide greater clarity going forward. It would, you know, avoid any need for refineries to, you know, time their petitions by looking at fundamentally what the statute directs EPA to look at, which is one year's throughput. But again, you know, we would, we're fundamentally agnostic. We are happy to prevail on any grounds. If I could just, with, of course, indulgence, make one point about or one or two points about Sinclair IV and then a brief point about the remedy. So, on Sinclair IV, which is the case that my friend on the other side has pointed to as sort of the jurisdictional, you know, the best case for the government on the jurisdictional question as to our statutory challenge. There, the briefing and the court's opinion both made clear that the petitioner was bringing a direct challenge to the verification letter regulation. The briefing and the court's opinion described the petitioner in that case as seeking to set aside that requirement. And in fact, at page 20 of EPA's brief, they also characterized Sinclair IV as being about a challenge to the 2000 regulation itself, to that 2007 regulation itself. That differentiates Sinclair IV from our case because we seek no relief as to the 2014 regulation. And it's precisely for that reason that if it is so important for EPA to continue trying to enforce this unlawful regulation, you know, it remains able to do so in other circuits without the precedential. In fact, I think we would hope the court, that EPA would take the hint from— Why did you just call it an unlawful regulation? Well, we think that the regulation is—we think that the interpretation that EPA says is trying to apply through the regulation is inconsistent with the Clean Air Act. But again, we're not seeking relief as to— Right, but you're calling it an unlawful regulation, and I thought your whole point was you're not challenging the regulation. That's how you— I'm sorry. I may have been speaking a little bit imprecisely. The court can resolve the statutory question without reference to the regulation. We seek no relief as to the regulation. But I took the court's questions today as acknowledging that there may be implications for the lawfulness of the regulation. Seems like there is a pretty strong implication. Yes, and so to that extent, it would be perfectly appropriate for EPA to take the guidance from the court and reconsider whether this is an appropriate regulation. But the point is it wouldn't have to. The regulation would remain on the books. EPA would be—and it would be able to enforce it against other parties. It may face challenges in those cases. But the point—but that's—the key point is that this court judges whether a petition is a backdoor challenge by the substance of the claim and the relief a party seeks. And we don't seek relief as to the 2014 regulation, so this court has jurisdiction over our challenge. And your last point about the remedy? Yes, on the remedy, I think, you know, it's important—you know, my friend on the other side kind of conspicuously did not commit to giving replacement RINs. You know, this very question was before EPA in the 2025 denial decisions where EPA had adjudicated petitions late, far, far outside the 90 days, even farther outside the 90 days than it was with us. And there EPA made the choice not to exercise its authority to give replacement RINs and to instead return worthless RINs that deprived— Isn't this just a question of further litigation? Like, we should just decide this case as we will. And on the timing stuff, EPA sometimes gives replacement RINs, sometimes they don't. And if they don't, more litigation? Arbitrary depreciation, et cetera? So, I think, Your Honor, in this circumstance where we're still in a position where the petitioners can get meaningful relief and EPA's policy is what it is, we would ask the court, consistent with its decision to expedite the briefing and consideration of this case, to decide the case with sufficient time so that we can have a meaningful remedy here and now. EPA's position, and I think Mr. Cates essentially said this, is that it is content to give us a meaningless remedy. And we don't think that's consistent with what the Clean Air Act is trying to achieve through the small refinery exemption scheme. Mr. Frank, are there any cases in which a small refinery has been denied replacement RINs and then successfully challenged that in court? I assume that's a discretionary decision on EPA's part. Has there been any judicial ruling saying, you know, EPA acted too late and now must give replacement RINs? I'm just curious if there's such cases. I believe there's a non-presidential decision in the Ninth Circuit involving a refinery called Kern where there was an issue. It wasn't exactly the issue you have here, but there was an issue where I think EPA, again, I believe decided that petition far outside the 90 days. And if I'm recalling that case correctly, the Ninth Circuit directed EPA to issue RINs that reflected the loss, replacing RINs that I think accounted for the loss in value due to exceeding the 90 days. This case is obviously somewhat different, and I think the broader set of RFS cases that are kind of coming behind us are somewhat different. But that's the closest case that I'm aware of, Your Honor. Thank you. Well, if the court has no further questions, we would ask that you vacate the denials. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Rao; Pan